UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TANYA I. BUTLER,          ) | |
| )                          | |
| Plaintiff                ) | |
| )                          | |
| v.                        ) | Docket No. 3:02CV01896 (SRU) |
| )                          | |
| )                          | |
| JOHN E. POTTER, Postmaster ) | |
| General                   ) | |
| )                          | |
| Defendant                ) | April 15, 2004 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Factual Background

The plaintiff, Tanya Butler, is an employee of the United States Postal Service. At all times relevant to this action, she was a Supervisor, Customer Services, at the Stamford, CT Post Office. *Complaint* ¶¶ 9, 11.

The plaintiff had been promoted to the position of Supervisor, Customer Services, EAS-16 in July 1995. This position's salary and benefits are governed by the Postal Services Executive and Administrative Schedule ("EAS") and the position is governed by the Postal Service's rules and regulations. *Report of Parties' Planning Meeting, Statement of Undisputed Facts,* ¶¶ 5, 6.

The plaintiff was absent from work from approximately July 1995 through April or May 1996. *Complaint* ¶¶ 14, 15; *Answer,* ¶¶14, 15; *Plaintiff's Deposition, Ex. 3, pp. 16-17.* From March through September 1996, James Long, the current Postmaster of the Stamford, CT Post Office, was the Officer-In-Charge ("OIC") at

1

the Stamford Post Office ("Long"). In this capacity, Long evaluated the plaintiff's work performance and rated the plaintiff's performance as "unacceptable" for fiscal year 1996.[1] This rating was subsequently approved by the then-Postal Service, Connecticut District Human Resources Manager, Gerald Newlan ("Newlan"). *Report of Parties' Planning Meeting, Statement of Undisputed Facts,* ¶ 7; *"EAS Merit Performance Evaluation" Ex. 2, p. 13.*

Long, who is white/Caucasian, also rated seven other Stamford Post Office employees for their performance during fiscal year 1996. This employee group, composed of supervisors and managers, consisted of five males and two females, who were all white/Caucasian, of Irish, Italian or unknown national origin. The member of this group were all, save one, older than the plaintiff and all were over 40 years of age at the time of their respective evaluations. The plaintiff was 41 years old and Long was 45 years old at the time of these evaluations and that of the plaintiff. *Ex. 2, p. 6.*

In fiscal year 1996, the plaintiff had used 1669 hours of leave; the other, contemporaneously-rated supervisory employees used from between 171 hours and 338 hours for the same period. *Ex. 2, p. 6.*[2]

Each of the seven other supervisory employees rated by Long for fiscal year 1996 received a rating of "met objectives/expectations". *Ex. 2, p. 6.*

---

[1] The plaintiff alleges that she received a preliminary merit rating evaluation by Ralph Morell, Jr., Manager of Ridgeway Station, for fiscal year 1996. Mr. Morrell denies that he conducted any merit evaluation of the plaintiff for fiscal year 1996 and that he was aware that Long and Newlan had discussed the issue of who would be the most appropriate management official to conduct the plaintiff's fiscal year 1996 merit rating evaluation. *Ex. 5-Declaration of R. Morrell, Jr.*

[2] The other supervisory employees rated by Long used 171, 172 188, 244, 251, 259 and 388 hours of leave, respectively, during fiscal year 1996.

On October 28, 1996, the plaintiff sought EEO counseling with the Postal Service, alleging claims of race, color, sex, national origin, age physical disability and retaliation, in connection with her receipt of an "unacceptable" merit evaluation rating and not receiving an "EVA" bonus for fiscal year 1996.[3] *Ex. 2, p. 33.*

On December 30, 1996, the plaintiff filed an "EEO Complaint of Discrimination in the Postal Service", again alleging claims of race, color, sex, national origin, age physical disability and retaliation, in connection with her receipt of an "unacceptable" merit evaluation rating and not receiving an "EVA" bonus for fiscal year 1996.[4] *Ex. 2, pp. 29-32.*

On February 25, 1997, the Postal Service notified the plaintiff that it was dismissing, as untimely, her claims alleging denial of a reasonable accommodation in November 1995, her claim of discrimination related to being scheduled for disability retirement counseling in May 1996 and her claim of discrimination in connection with her receipt of an unacceptable merit evaluation rating for fiscal year 1995.[5] The Postal Service informed the plaintiff that it would investigate her claims of alleged discrimination based upon her race, color, national origin, sex, age, disability and retaliation in connection with her receipt of

---

[3] "EVA"; "economic value added" was a former Postal Service compensation system that included EAS employees. The plaintiff did, in fact, receive a prorated EVA bonus for fiscal year 1996. *Ex. 2, p. 5.*

[4] The plaintiff also alleged that she was denied a reasonable accommodation on November 22, 1995, that she was scheduled for disability retirement counseling on May 23, 1996, that she received an "unacceptable" EAS merit evaluation rating in July 1996 (for fiscal year 1995). However, these claims are not raised in the Complaint filed in this Court.

[5] Postal Service employees are required to seek EEO counseling within forty-five (45) days of an alleged discriminatory action. 29 C.F.R. § 1614.105(a) (1).

3

an "unacceptable" merit evaluation rating for fiscal year 1996, in October 1996. *Ex. 2, pp. 25-27.*

On March 12, 1997, the Postal Service affirmed its dismissal of all of the plaintiff's claims, except for the claim related to the October 1996 "unacceptable" merit evaluation rating. *Ex. 2, p. 24.*

On July 10, 1997 and, again on August 16, 1997, the Postal Service notified the plaintiff that it had completed its investigation into her discrimination complaint and advised her of her right to request a final agency decision, a hearing before the Equal Employment Opportunity Commission ("EEOC") or to file a civil action in the United States District Court. The plaintiff requested a hearing before the EEOC. *Ex. 2, pp. S-V.*

On June 10, 2002, the EEOC dismissed the plaintiff's claims, due to the plaintiff's failure to submit an affidavit during the EEO investigation process and the plaintiff's subsequent failure to response to an "Order to Show Cause" issued by the EEOC. *Ex. 2, p. L-M.*

On July 22, 2002, the Postal Service issued a "Notice of Final Decision" in connection with the plaintiff's discrimination complaint. The final decision notice informed the plaintiff that the Postal Service was closing the plaintiff's claim as unsupported. *Ex. 2, pp. A-K.*

On October 25, 2002, the plaintiff filed the instant civil action in this Court. The plaintiff has asserted claims of discrimination based on age (Count I), gender, race and color (Count II) and claims pursuant to Connecticut state law (Count III). The plaintiff seeks monetary damages for current and future lost

4

wages and benefits, emotional distress, damage to her personal and professional reputation. The plaintiff also seeks punitive damages in connection with the allegations made pursuant to Connecticut state law. *Complaint, Cts. I-III.*

## Argument

(a)  Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designat[ing] specific facts showing that there is a genuine issue for trial.'" Amnesty America v. Town of W. Hartford, 288 F. 3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). "The court must resolve all ambiguities and draw all inferences in favor of the non-moving party." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002). However, "[a] dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" New York Stock Exchange, Inc. v. New York, 293 F.3d 550, 554 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). To survive a motion for summary judgment, a plaintiff must produce more than merely <u>some</u> evidence to support a rational finding of discrimination; she must produce sufficient evidence to that the legitimate, non-discriminatory reasons proffered by the defendant were false and that illegal discrimination was the real reason for

the challenged employment action. Braheney v. Town of Wallingford, 2004 U.S. Dist. LEXIS 5515 (D. Conn. 2004) (citing cases) (emphasis added).

(b)  Applicable Law

   1)  *Race/Color Discrimination*

In order to prevail on a claim of race discrimination, a plaintiff must prove a *prima facie* case by a preponderance of the evidence. Collins v. New York City Transit Authority, 305 F. 3d 113, 118 (2d Cir. 2002). To establish this *prima facie* case, a plaintiff must show that (1) she was a member of a protected group; (2) she was qualified for her employment position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Id. A plaintiff sustains an adverse employment action is she sustains a materially adverse change to the terms and conditions of her employment. See Galabya v. New York City Board of Education, 202 F. 2d 636, 640 (2d Cir. 2000) (termination of employment or material loss of benefits constitutes an adverse employment action). However, not every adverse employment action is actionable; to qualify as "adverse" an action must be sufficiently disruptive and more than a mere inconvenience or an alteration of job responsibilities. See Terry v. Ashcroft, 336 F. 3d 128, 138 (2d Cir. 2003).

   2)  *Gender Discrimination*

To establish a *prima facie* case of gender discrimination, a plaintiff must prove that (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse

6

employment action occurred under circumstances giving rise to an inference of discriminatory intent. See Terry v. Ashcroft, 336 F. 3d 128, 138 (2d Cir. 2003). If a plaintiff establishes a *prima facie* case, the defendant must proffer a legitimate, non-discriminatory reason for the challenged action. See Weinstock v. Columbia University, 224 F. 3d 33, 42 (2d Cir. 2000), cert. denied, 157 L. Ed. 2d 24, 124 S. Ct. 53 (Oct. 6, 2003). Once the defendant produces its legitimate, non-discriminatory reason, the plaintiff must then offer evidence sufficient to support a rational finding that the defendant's proffered reason was false and that, more than likely, gender discrimination was the real reason for the adverse employment action. Van Zant v. KLM Royal Dutch Airlines, 80 F. 3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F. 3d 105, 110 (2d Cir. 1994).

### 3)  *Age Discrimination*

In order to establish a *prima facie* claim of age discrimination, pursuant to 29 U.S.C. § 621, *et seq.*, a plaintiff must prove by a preponderance of the evidence that (1) she is a member of a protected class (over 40 years of age); (2) she is qualified for her position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of age discrimination. Abdu-Brisson v. Delta Air Lines, Inc., 239 F. 3d 456, 466 (2d Cir. 2001). If the plaintiff makes a *prima facie* showing of age discrimination, the defendant is required to offer a legitimate, non-discriminatory reason for the alleged adverse employment action. Id. The burden then shifts back to the plaintiff to show circumstances that would be

7

sufficient to permit a rational finder of fact to infer that the employment decision was more likely than not based upon discriminatory considerations. <u>Terry v. Ashcroft</u>, 336 F. 3d 128, 138 (2d Cir. 2003).

<u>Plaintiff's Claims</u>

1)   <u>*Race/Color Discrimination*</u>

The plaintiff is the only black/African-American supervisory employee rated by Long in fiscal year 1996. She is also the only supervisory employee who received an unacceptable rating from Long for the same time period. Assuming for purposes of this motion only, that an "unacceptable" rating constitutes an adverse employment action, the plaintiff still cannot successfully maintain this action at trial.

The critical element of this claim is Long's intent; did he assign the plaintiff an "unacceptable" rating because of her race or color? The defendant respectfully submits that the plaintiff's evidence, viewed most favorably to her claim, does not establish a claim of race or national origin discrimination.

When asked to articulate the factual basis for her claim of race discrimination, the plaintiff testified: "I don't know. I'm a Black-American. I was evaluated by a white male." *Plaintiff's Deposition, Ex. 3, p. 3. (hereinafter "Ex. 3").* The defendant submits that this fact alone cannot, as a matter of law, support a race discrimination claim. The plaintiff admits that Long never uttered any racial epithet or otherwise made any inappropriate comment or remark to her. *Ex. 3, p. 41.* The most the plaintiff can say about Long, in terms of his alleged racial animus, is an extremely vague claim, unsupported by any

8

evidence, is that she perceived that Long did not like her and that he seemed to "ignore" her. *Ex. 3, pp.39-45.* Long stated that he did not ignore the plaintiff and that he greeted her whenever he encountered her at work. *Ex.4-Declaration of J. Long.* The plaintiff concedes that Long did, in fact, speak to her at work. *Ex. 3, p. 40.* After being given numerous opportunities to articulate with any degree of precision what Long allegedly did (or did not do) to impact some racial animus, the plaintiff could not offer anything other than her conclusory statement of "Maybe some prejudice there." *Ex. 3, p. 39.* This evidence is wholly insufficient to meet the plaintiff's burden. A plaintiff's "purely conclusory allegations of discrimination, absent any concrete particulars" are insufficient to defeat a motion for summary judgment. See Cameron v. Community Aid for Retarded Children, Inc., 335 F. 3d 60, 63 (2d Cir. 2003) (quoting Meiri v. Dacon, 759 F. 2d989, 998 (2d Cir. 1985)).

  The plaintiff testified that the same factual basis that supported her claim of race discrimination also supported her claim of discrimination based upon her color. *Ex.3, pp. 44-45.* The defendant submits that this claim is based upon the same unsubstantiated and conclusory allegations of discrimination cited above and, for that reason, the claim of discrimination based upon color is also fatally flawed.

  Even assuming that the plaintiff could make a credible *prima facie* claim of race or color discrimination, the defendant has articulated a legitimate, non-discriminatory reason for assigning her an "unacceptable" merit evaluation rating, her attendance for the fiscal year.

The plaintiff had used 1669 hours of leave during fiscal year 1996. *Ex.2, p. 6*. The other seven employees evaluated by Long during the same period had substantially less leave usage. In fact, the plaintiff's leave usage for fiscal year 1996 is almost five times as great as the next highest comparable employee and is more than nine times greater than the comparable employee with the least leave used during the same period. *Ex. 2, p. 6*. Long believed that the plaintiff's absence for more than 70% of her work year merited an "unacceptable" rating, inasmuch as she did not contribute to the Postal Service for most of the relevant fiscal year. *Ex. 2, p. 8; Ex. 4-Declaration of J. Long*. Long believed that the plaintiff's extended absence resulted in her not performing her duties and, therefore merited an "unacceptable" rating. Long did not believe that any other rating, including "Not Rated" was applicable to the plaintiff's situation. *Ex. 4-Affidavit of J. Long*.

The plaintiff has not offered any evidence that Long's reason for rating her as "unacceptable" for fiscal year 1996 are anything other than his good faith and honest belief that such a rating was proper. When asked in her deposition if she thought that Long's reason was pretextual; whether he was being truthful in asserting the reason, she stated that she does not know. *Ex. 3, p. 61*.

Absent evidence that a decision was so lacking in merit as to impugn its genuineness, an employer's decision as to criteria for employment decisions is not subject to being second-guessed. See Walsh v. United Cable Technologies Services Corporation, et al, 46 F. Supp. 2d 170, 173 (D. Conn. 1999) (citing Dister v. Continental Group, Inc., 859 F. 2d 1108, 1116 (2d Cir. 1988) (summary

10

judgment granted to employer in connection age discrimination claim arising from organizational reorganization).

Long rationally believed that the absence of a supervisor for most of the fiscal year created a situation in which she was not contributing to the organization. The plaintiff also conceded that attendance at work is an important function of any position with the Postal Service, due to the operational problems that are created by absences. *Ex. 3, p. 46.* The plaintiff did not meet her supervisory position commitments due extended absence from work during fiscal year 1996 and, pursuant to the definition accompanying an "unacceptable" merit evaluation rating *(see Ex. 2, p. 6)*, Long's choice of "unacceptable" was entirely appropriate. While the plaintiff might disagree with Long's assessment of the impact of her extended absence, she cannot offer any evidence that his decision was based on any other factor.

The defendant has proffered a legitimate, non-discriminatory reason for according the plaintiff an "unacceptable" rating. The plaintiff's evidence, viewed in the most favorable light, fails to prove that Long's stated reason is a pretext for discrimination. For this reason, no rational fact-finder could reasonably conclude that Long was animated by any prohibited consideration.

1) <u>Gender Discrimination</u>

There were a total of eight employees, including the plaintiff, evaluated by Long for fiscal year 1996. This total includes three females, including the plaintiff. *Ex. 2, p. 6.* The two females, other than the plaintiff, received "met objectives/expectations" ratings. *Ex. 2, p. 6.*

The plaintiff has testified that she believes that she was the victim of gender discrimination in terms of her merit evaluation rating because her evaluator, Long, was a male and he, in turn was receiving directions to give her the rating from another male, Newlan. The plaintiff also bases her claim on the allegation that Long evaluated male management personnel more favorably. *Ex. 3, pp. 36-39.*

Long evaluated five male management employees during fiscal year 1996. *Ex. 2, p. 6.* He did not evaluate any other management officials at the Stamford, CT Post Office for fiscal year 1996 and, specifically, did not evaluate either Robert Palmer of David Duddie, as claimed by the plaintiff. Further, Long was not ordered by Gerald Newlan to give the plaintiff an "unacceptable" rating. *Ex.4- Affidavit of J. Long; Ex. 5-Declaration of R. Morrell.* The plaintiff admits that she never had any negative interaction with Mr. Newlan. *Ex 3, p. 31.* There is no factual basis for the plaintiff's claim that Newlan directed Long to rate the plaintiff as "unacceptable" for fiscal year 1996.

The undisputed record evidence clearly proves that the male employees evaluated by Long in fiscal year 1996, who all received "met objectives/expectations" ratings, had vastly less leave usage than the plaintiff. Long cited leave usage as the critical factor in giving the plaintiff an "unacceptable" rating and it is undisputed that her leave usage was far and away the greatest of any other employee evaluated by Long, male or female.

With respect to the management employees that the plaintiff claims were treated better because of their male gender, she admitted that she did not have

any knowledge of their attendance records. *Ex. 3, p. 38.* This admission makes clear that the plaintiff has no factual basis for challenging, as pretextual, Long's stated reasons for giving her an "unacceptable" rating. The objective evidence establishes without any doubt that Long was correct in his assessment of the plaintiff's leave usage, as compared to the other management employees, both male and female, that he evaluated for fiscal year 1996.

    2)    <u>Age Discrimination</u>

The plaintiff claims that Long gave he the "unacceptable" evaluation rating due to her age; over 40 years old. A review of the ages of the comparable employees evaluated by Long proves that six of the seven other employees were older than the plaintiff at the time of the evaluation process. The remaining employee was exactly seven months younger than the plaintiff. Further, Long was four years older than the plaintiff as the time of the challenged evaluation. *Ex. 2, p. 6.*

Long's legitimate, non-discriminatory reason for according the plaintiff an "unacceptable" rating has been set forth above and the plaintiff cannot offer any evidence to rebut the reason. She admitted in deposition that she did not know the attendance records of any allegedly younger employee evaluated by Long for fiscal year 1996. *Ex. 3, p. 35.* The attendance record of the only employee younger than the plaintiff and also evaluated by Long for fiscal year 1996, Brian Dolan, shows that Mr. Dolan had used 244 hours of leave that year, as compared to the plaintiff's use of 1669 hours for the same period. *Ex. 2, p. 6.*

The defendant submits that there is simply no evidence adduced by the plaintiff that would allow a rational fact-finder to determine that Long gave her an "unacceptable" rating because of her age and for that reason summary judgment is appropriate on this claim.

### 3) *State Law Claims*

The plaintiff has also made claims under Connecticut state law. The defendant submits that, as a matter of law, the plaintiff's state law claims are barred as a matter of law.

This Court has previously dismissed similar claims brought in other cases involving the Postal Service. In Colon v. United States Postal Service, 95 F. Supp. 2d 85, 87 (D. Conn. 1999) and Serrano v. Runyon, 1997 U.S. Dist. LEXIS 18422, 16 (D. Conn. 1997), this Court traced the preemption doctrine under Title VII and dismissed similar state law statutory and common-law claims brought by Postal Service employees because, as Federal employees, their exclusive remedies lie in Title VII of the Civil Rights Act of 1964.

Title VII embodies an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employee discrimination. Brown v. General Services Administration, 425 U.S. 820, 829, 833-834; 96 S. Ct. 1961 (1976); Serrano, 1997 U.S. Dist. LEXIS 18422 at 17; Colon, 95 F. 2d at 89. Therefore, all actions involving Federal employment discrimination claims are preempted by Title VII. Colon, 95 F. Supp. at 89.

In Colon, the court cited Hughes v. United States Postal Service, 700 F. Supp. 779, 783 (S.D.N.Y. 1988) for the proposition that claims brought under 42

14

U.S.C. § 1981 are preempted by Title VII and the Rehabilitation Act.  See also, DiMaggio v. United States Postal Service, 643 F. Supp. 1, 4 (D. Conn. 1984) (42 U.S.C. § 1985, state and Federal constitutional claims are preempted by Title VII).  The Second Circuit has also noted, in the context of a Section 1983 claim, that Federal employees are restricted to Title VII when complaining of employment discrimination.  Annis v. County of Westchester, 36 F. 3d 251, 255 n. 4 (2d Cir. 1994).

The reasoning of the cases cited above compels dismissal of the plaintiff's state law claim, inasmuch as her claims in this action are governed exclusively by the applicable Federal law.

### Conclusion

For the reasons set forth above, the defendant respectfully submits that the plaintiff's claims are barred as a matter of law and that entry of summary judgment for the defendant is appropriate.

> The Defendant
>
> By his attorney:
> KEVIN J. O'CONNOR
> United States Attorney
>
> _____
> Anthony T. Rice
> Special Assistant U.S. Attorney
> United States Postal Service
> Law Department
> Northeast Area Office
> Windsor, CT 06006-0170
> (860) 285-7098
> E-Mail: anthony.t.rice@usps.gov
> Connecticut Federal Bar No. ct 22474

## CERTIFICATE OF SERVICE

I, Anthony T. Rice, Special Assistant U.S. Attorney, hereby certify that I served a copy of the attached document, by first-class mail, postage prepaid, upon the following persons:

Jerald S. Barber, Esq.
Williams & Barber
55 Church Street, Suite 800A
New Haven, CT 06510

Dated: April 15, 2004

_____
Anthony T. Rice